## GULF & S. I. R. R. v. SUTTER MOTOR CAR CO.*

### No. 14120.

Court of Appeal of Louisiana. Orleans.

Feb. 13, 1933.

Rudolph O. Vorbusch, of New Orleans, for appellant.

Lemle, Moreno & Lemle, of New Orleans, for appellee.

JANVIER, Judge.

When this case was originally before us (Gulf & Ship Island Railroad Co. v. Sutter Motor Co., 12 La. App. 495, 126 So. 458, 459), we stated the facts with reference to the question of liability as follows:

"Defendant, Samuel E. Sutter, using the trade-name Sutter Motor Company, operates a public garage.

"Plaintiff owned a Nash automobile which it assigned to one of its employees for use in his work, and which was stored over night in defendant's garage.

"During the night and without the knowledge of defendant, it was taken out of the garage by one of defendant's employees, who was in charge of the garage for the night, and, while it was being operated by that employee, Schayer, for his own purposes, it was seriously damaged as a result of his negligence.

"Plaintiff attempts through this suit to recover the cost of making the repairs which he claims were necessitated by the accident.

"Defendant resists payment on the theory that the employee, in taking out the car for his own purposes, was not acting within the scope of his employment and that therefore he (Sutter) is not liable for the damages resulting to plaintiff's car from the unauthorized act of the employee."

We held that defendant was liable for such damage as had been sustained by the automobile, but we felt that the evidence in support of the various charges made was not sufficient to warrant the judgment in favor of plaintiff for $488.52, and we remanded the matter for additional evidence with regard to the correctness of the various charges making up that sum.

■ From the photographs which we find in the record, which photographs were taken on the day after the accident at the request of plaintiff, and, possibly, though there is some doubt on this point, under the supervision of plaintiff's counsel, it is very apparent that the damage sustained by the automobile did not even approximate that set forth in plaintiff's petition. We well realize that the question of the extent of damage sustained is one of fact, and we hesitate always to interfere on such a question with the finding of the court below; but it is manifest that, in having the automobile repaired, plaintiff, or its representative, made no effort whatever to limit the repairs to the damage sustained in the collision, but undertook to have the entire car overhauled and put into a condition as nearly perfect as possible. We need only cite a few items charged for to show the entire lack of effort on the part of plaintiff's representatives to limit the claim to the actual damage sustained. In the first place, an effort is now made to show that the right side of the car sustained considerable damage. The photographs show only the left side of the car, but these photographs, as we have said, were taken under the supervision of plaintiff's agent, or of plaintiff's attorneys, and we cannot but believe, since they were taken for the purpose of showing the extent of the damage, that at least one would have been taken of the right side of the car, had any damage existed there.

■ We will also repeat what we said when the matter was originally before us, that, though the pictures show no damage whatever to the rear fenders, the bill introduced contains a charge for repairing these two

fenders, said charge being a substantial one. We also notice a charge for a new headlamp cross-tube, although the picture shows this tube to be in practically perfect condition. We find a charge for a new tail-light bulb and, while this item is insignificant in amount, it nevertheless indicates a reckless disregard of the rights of defendant, because no one contends for a moment that the rear of the car was in any way involved in the collision. We also find a charge for six new connecting rods and for six new wrist pins. We know that these parts are on the inside of the motor and could not in any way have been involved in a collision which damaged only the left front wheel and running board, and, even conceding that the base of the motor was in some way broken—and we cannot but believe that there is grave doubt on this point—the cracking of that base could not have made it necessary that all connecting rods and all wrist pins be renewed. There are many other items included in the various bills which show conclusively that, when the automobile was repaired after the accident, there was an apparent attempt made to go over the entire car and to renew every part which was in any way worn, or which even looked shabby. That there was a willingness on the part of plaintiff's agent to exaggerate the damage sustained is shown by the allegations of the petition, which contain a charge of $50 for the agent's expenses during a three-day stay in this city, which stay he claims was necessitated by the damage to the car. The evidence falls far short of showing that any appreciable portion of this claim represents actual expenses. The same may be said of a charge of $25 for the expenses of a driver alleged to have been brought from some point out of the city to New Orleans to drive the car on a contemplated trip. There was a charge for a new horn at $15, though it is shown that the horn was contained in the inside of the hood, which covered the motor, and, in spite of the elaborate argument of an employee of the garage company which repaired the car that the horn could have been broken when the base of the engine was cracked, we are unable to place any credence in that statement, and it appears to us that a new horn was purchased just because the other was a little bit old and a new one would be better.

When we remanded this matter, we did so to give plaintiff an opportunity to prove the particular items of damage which actually resulted from the collision, and we find ourselves now, as a result of that new evidence, thoroughly convinced that a large number of the charges made were for replacements and renewals that were not necessitated by the accident.

It is now argued that defendant is responsible even if the amount charged is excessive, because, so it is maintained, the repairs were authorized by defendant, who employed the garage company which made the repairs and agreed with them to pay for such repairs as might be necessary. Defendant denies that he sent or took the car to the garage company, asserting that it was taken by the agent of plaintiff, or by some one sent by that agent, and we believe that the evidence corroborates defendant's contention on this point. We notice, for instance, that the said agent testified that when defendant desired to make the repairs in his own garage the agent objected. He testified as follows with reference to his refusal to have the defendant make the repairs:

"I told him I would refuse to have anyone but the Nash Company do it and my man took the car there that night."

We find ourselves in a very difficult position in our attempt to determine just what damage actually resulted from the collision for which defendant is responsible; but since we cannot persuade ourselves that plaintiff's evidence on this point should be believed, we have no alternative except to accept that of defendant, and we find in the record various statements with reference to the estimated cost of making the repairs. Among them, and greater than any of the others, is that of defendant himself, who states that the repairs should not have cost more than $150. We, therefore, feel that he, being responsible for such damage as was actually sustained, should be required to pay the amount which he himself believes would place the car in the condition in which it was before the accident. We do not find in the record any evidence to guide us in determining whether, in making that estimate, defendant included the cost of a new tire and a new tube. These two items are shown to have cost $48.01, and we believe that plaintiff is entitled to be reimbursed that amount. The other items claimed we do not find justified by the evidence.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended by reducing the amount thereof to $198.01, together with legal interest from judicial demand, and, as thus amended, it is affirmed; plaintiff and appellee to pay costs of this appeal, defendant to pay costs of the district court.

Judgment amended and affirmed.